IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL J. SMITH,

    Plaintiff,

vs.                                                                             Civil No. 03-681 WJ/WDS

TRADITIONS, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed June 14, 2004 **(Doc. 37)**.  This is a personal injury and product liability case arising from an accident in which Plaintiff was injured firing a muzzle loading shotgun.  The case is in federal court based on diversity, Defendant Traditions, Inc. ("Traditions") being a Connecticut corporation with its principal place of business in Connecticut.  Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motion is not well-taken and will be denied.

### Background

In December, 2001,  Plaintiff ("Smith")  purchased a Traditions brand muzzle loading 12-gauge shotgun at a retail sporting goods dealer in Durango, Colorado.  The shotgun was mail-ordered along with a replacement steel "choke tube," which Plaintiff testified he needed for shooting waterfowl with steel shot.  Deft's Ex. A at 92:18-25.[1]  There was some initial error in

---

[1] Defendant's exhibits for the summary judgment motion reference the exhibits attached to Defendant's Motion in Limine which is filed with the Court (Doc. 39).  Because Plaintiff has lettered, rather than numbered, his exhibits, the Court will note which party exhibits are being

the ordering of the correct "choke tube," but this part of the gun has no bearing on the relevant facts of the case.

Sometime between the time Smith returned home with the gun and the accident, Smith read the "Warranty and Shooting Instructions" more than once. However, he remembers that he "wasn't real clear on how much powder to use." Ex. A at 101:1-9. Plaintiff also attempted to purchase a device called a "volumetric shotgun powder measure," but was unable to find one at any of the stores he checked. Ex. A at 103:21-25. When Plaintiff returned to the store to pick up the steel choke tube that had been re-ordered, he inquired whether the store had a shotgun powder measure in stock. When the store clerk told Plaintiff that there were none in stock, and that he would have to order one, the two of them went on to discuss the amount of powder to use in the shotgun. At some point, Plaintiff decided not to order the device, instead working out a conversion from ounces into grains in determining what he and the clerk thought would be the proper amount of powder to use. They did this by using a chart which converted pounds into grains, and then determining how many ounces were in a pound. Ex. A at 107:1-25.

On January 10, 2002, Smith loaded the gun, allegedly following the manufacturer's instructions sold with the gun, which instructed the user, in part, to load an ounce by volume of shot and of powder into the gun before firing. Upon firing the shotgun, the barrel separated from the stock and recoiled into Smith's face. Plaintiff sustained personal injuries, including physical injury, permanent impairment and disfigurement as a result of the accident.

Plaintiff contends that Defendant negligently designed and manufactured the shotgun. He alleges that the separation of the barrel from the stock was the result of defective design and/or

---

referenced.

manufacturing, namely that the instructions or warnings were inadequate and/or inaccurate; that the shot gun was not designed and/or manufactured to fire the amount of shot and powder that the Defendant instructed the Plaintiff to use; that Defendant failed to include a volumetric shotgun measure device unique to this gun.  The Complaint asserts claims for negligence (Count I); strict liability (Count II); and breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose (Count III).  He requests compensatory damages to cover medical and rehabilitation expenses, pain and suffering, mental distress and loss of enjoyment of life.

Defendant denies all of Plaintiff's contentions, and submits that Plaintiff was comparatively negligent in causing his injury.  Defendant seeks summary judgment on all of Plaintiff's claims, but does not address Plaintiff's warranty and design-based claims in its briefs.  Defendant represents that Plaintiff has agreed to withdraw his design defect and punitive damages claims, but that Plaintiff has not yet filed the necessary dismissal papers.  Plaintiff does not confirm this in the response.  Thus, the instant motion is confined to Plaintiff's negligence claim concerning failure to warn and inadequate instructions.

## Discussion

In the instant motion, Defendant seeks summary judgment on all of Plaintiff's claims. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Jones et al v. Kodak Med'l Assistance Plan, 169 F.3d 1287, 1291 (10th Cir. Utah) (citing Fed.R.Civ.P. 56(c)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  When applying a

summary judgment standard, I must construe the factual record in the light most favorable to the party opposing summary judgment.  Butler v. City of Prairie City, Kan.,172 F.3d 736, 744 (10th Cir. 1999).

Plaintiff does not dispute the facts surrounding the purchase of the gun, and does not dispute that he was "confused" regarding the proper amount of powder to use.  Nor does Plaintiff take issue with Defendant's statements that he sought the store clerk's advice regarding the proper amount of powder to use in the shotgun without asking the clerk about his muzzleloading background; and that Plaintiff did not seek the advice of any other person, including two close friends with muzzle loading experience.  Plaintiff simply maintains that he followed the instructions as written by the manufacturer.

Plaintiff does dispute Defendant's Undisputed Facts Nos. 11 and 12, which state that Plaintiff ignored the instructions by "improperly loading 360 grains weight of Clean Shot powder, instead of loading the instructed '1 ounce by volume' using the volumetric shotgun powder." Plaintiff disputes both that he ignored the instructions, and that he loaded the gun with "three ounces of shot (by volume) as stated in Defendant's motion."[2]  Plaintiff also disputes Defendant's Fact No. 12 in that it inaccurately undercuts the opinion of Charlie Domenici, Plaintiff's expert.

**I.      Use of Ordinary Care Regarding Instructions for Use**

Defendant contends that Plaintiff has not established that Defendant failed to use ordinary

---

[2] In setting out the parties' positions, the Court does not propose to suggest whether Plaintiff's calculation that "360 grains weight" equals "three ounces of shot by volume" is correct.  Defendant's position is that Plaintiff grossly overloaded the gun with powder, by about five times the correct amount.

4

care regarding instructions for use.  This contention is premised on Defendant's <u>Daubert</u>[3] challenge to the opinion of Mr. Domenici, who opined that it was wrong to print "ounces" for powder instead of "grains," and that the instruction manual as written was unclear and confusing. Deft's Ex. B at 34:16-17; Pltff's Ex. B at 132:11-21.  Defendant argues that Plaintiff cannot establish a prima facie case on this issue without the help of an expert, since an ordinary citizen does not possess knowledge about the use and operation of a black powder shotgun.  Thus, Defendant proposes that without Mr. Domenici's opinion, Plaintiff cannot show causation.

      A.      <u>Admissibility of Expert Testimony of Mr. Domenici</u>

If proffered testimony fails to cross <u>Daubert</u>'s threshold for admissibility, the trial judge court may exclude the evidence from consideration when ruling on a motion for summary judgment. <u>See</u>, <u>Cavallo v. Star Enter.</u>,100 F.3d 1150, 1159 (4th Cir. 1996); <u>Peitzmeier v. Hennessy Indus., Inc.</u>, 97 F.3d 293, 297-99 (8th Cir. 1996); <u>Porter v. Whitehall Lab., Inc.</u>, 9 F.3d 607, 612, 616-17 (7th Cir. 1993) <u>Claar v. Burlington N.R.R.</u>, 29 F.3d 499, 502-05 (9th Cir. 1994); <u>Casey v. Ohio Medical Products</u>, 877 F. Supp. 1380 (N.D.Cal.,1995) (noting that first issue is whether expert's opinion is sufficient for admission into evidence under Fed.R.Evid. 702 and 703; and second, if admissible, if sufficient to create a genuine issue of material fact on the issues).

Yet, the <u>Daubert</u> question will be reserved for another day.  I find it unnecessary to pass on either Defendant's <u>Daubert</u> challenge or its alternative argument in order to rule on this motion.  Defendant contends either that Mr. Domenici's opinion is not admissible under <u>Daubert</u>,

---

[3] In <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), the Supreme Court held Federal Rule of Evidence 702 requires the trial court to ensure any scientific testimony offered under the rule is "not only relevant, but reliable." 509 U.S. at 589.

or alternatively, even if found to be admissible, that his opinion is insufficient to show that Traditions failed to use ordinary care in providing instructions to a foreseeable user. However, based on the available evidence, I arrive at quite the opposite conclusion: that Plaintiff has presented enough evidence *without* the use of expert testimony to preclude summary judgment on this claim.

  B. Standard on Ordinary Care

Under New Mexico products liability law, a supplier "must use ordinary care to provide directions for use of the product to avoid a risk of injury caused by a foreseeable manner of use." N.M.UJI §13-1416. The duty to use ordinary care is discharged by providing directions that are adequate and have the following characteristics:

> (1) [The directions] must be in a form that can reasonably be expected to catch the attention of the reasonably foreseeable user of the product;
> (2) [The directions] must be understandable to the reasonably foreseeable user of the product; and
> (3) [The directions] must disclose the nature and extent of the danger. In this regard, there must be specified any harmful consequence which a reasonably foreseeable user would not understand from a general warning of the product's danger or from a simple directive to use or not to use the product for a certain purpose or in a certain way.

  C. Whether Plaintiff Has Shown Issues of Fact on Use of Ordinary Care

Daubert's focus is the reliability and relevance of any scientific testimony offered under Fed.R.Evid. 702. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) significantly clarified the scope of Daubert, holding that the Rule 702 gatekeeping duties of the trial judge apply to all expert testimony, whether such testimony is based on scientific, technical or other specialized knowledge. However, neither Daubert nor Kumho applies where the evidence need not be proffered by an expert under Fed.R.Evid. 702, as in the present case. While expert testimony

6

might be helpful here, it is not necessary in order to arrive at the conclusion that there are factual disputes regarding whether the instructions are reasonably understandable to a foreseeable user of the shot gun.

The instructions for loading the shotgun reads as follows:

<u>Selecting the Powder Charge</u>:

1. To achieve the best results with your shotgun, Traditions recommends using the volume to volume method of loading. This method employs the same amount of Powder as shot when measured by *volume*. To measure the powder charge use a volumetric shotgun powder measure. Set the scale on the measure to the desired charge (i.e.) 1 oz *by volume*. Leaving the measure at the same setting fill with the lead shot. With method both the powder and shot will be of *equal volume* (i.e.) 1 oz [sic] each.

CAUTION: Maximum powder charge, not to be exceeded is 1 1/4 ounces measured by volume. Pltff's Ex. E (emphasis in original). It is undisputed that the instructions called for: an equal measure of both powder and shot; measured "by volume"; and use of the volumetric shotgun powder measure. Yet it is also undisputed that the gun was grossly overloaded with both powder and shot when it was fired. Defendant insists that the instructions to use a volumetric shotgun measure are clear, but Plaintiff contends that they may still mislead a user by failing to explain to the reader that a "one volume ounce" as measured in the volumetric shotgun powder measure does not equal a one volume ounce as the phrase is commonly understood.

Defendant's own expert states that instructions need to be made to address first-time users. Deft's Ex. D at 67:8-15. It is undisputed that Plaintiff bought the gun at a retail sporting goods store. The instructions are written for the general public – the consumers to whom Defendant sells the muzzle-loading shotguns. Defendant does not offer any fact which suggests that Plaintiff was not an intended or "foreseeable" user of the product. It may be that in other

contexts such as design defects or professional malpractice, expert testimony could be necessary and even critical. As Plaintiff notes, Defendant relies on such cases which have no relevance to the sole issue of the negligence claim.[4] Thus, because potential first-time users can decide whether the instructions are adequate, a ruling on this motion does not ride on expert testimony. Cmp., e.g., Pharmaseal Laboratories, Inc. v. Goffe, 90 N.M. 753, 757-58 (1977) ("Medical malpractice must be shown by expert testimony on the standard of care, unless the question may be determined by the ordinary knowledge of a layman").

In sum, the Court does not need an expert to come to the conclusion that a question of material fact remains on the issue of whether the gun loading instructions were adequate. It is enough that a reasonable juror could find the instructions to be inadequate based on the evidence without the benefit of Mr. Domenici's testimony.[5] Defendant is not entitled to summary judgment on Plaintiff's negligence claim (Count I).

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment **(Doc. 37)** is hereby DENIED on Plaintiff's negligence claim (Count I).

_____
UNITED STATES DISTRICT JUDGE

---

[4] See, e.g., Romero v. State, 112 N.M. 291 (N.M.App. 1991) and Duran v. General Motors Corp., 101 N.M. 742 (N.M.1983), overruled on other grds.by, Brooks v. Beech Aircraft Corp., 120 N.M. 372 (1995)(design defects); Cervantes v. Forbis, 73 N.M. 445 (1964) (medical malpractice).

[5] The addition of Mr. Domenici's opinion into the mix would only weigh in Plaintiff's favor. Therefore, there is no need to consider Defendant's alternative argument that the expert's testimony is insufficient to help establish Plaintiff's prima facie case.